No. 26-5368

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, et al.,

Plaintiff-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants-Appellants.

On Appeal from the United States District Court for the District of Columbia (No. 26-cv-02886)

# BRIEF OF AMICI CURIAE ILLINOIS, CALIFORNIA, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, DISTRICT OF COLUMBIA, HAWAII, MAINE, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, RHODE ISLAND, VERMONT, VIRGINIA, WASHINGTON, WISCONSIN, AND THE GOVERNOR OF KENTUCKY IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANTS' STAY MOTION

ROB BONTA
Attorney General
State of California

MICHAEL L. NEWMAN
Senior Assistant Attorney General
JAMES E. STANLEY
Supervising Deputy Attorney General
LISA C. EHRLICH
Deputy Attorney General
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General
ALEX HEMMER
Deputy Solicitor General
KATHLEEN NACCARATO
Assistant Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
alex.hemmer@ilag.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to this Court's Rule 28(a)(1), I hereby certify that:

### A. Parties and Amici

Except for the following, all parties, intervenors, and amici that appeared before the district court or are appearing before this Court are identified in defendants' stay application: Amici States Illinois, California, Arizona, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, Washington, Wisconsin, and the Governor of Kentucky.

### B. Rulings Under Review

References to the rulings at issue appear in the stay application.

### C. Related Cases

We are not aware of any related cases within the meaning of this Court's Rule 28(a)(1)(C).

/s/ Alex Hemmer
ALEX HEMMER

November 6, 2026

# TABLE OF CONTENTS

Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..... i

TABLE OF AUTHORITIES ..... iii

INTRODUCTION AND IDENTITY AND INTEREST OF AMICI STATES ..... 1

ARGUMENT ..... 3

The Stay Motion Should Be Denied. ..... 3

A. The challenged conditions would undermine the States' constitutional entitlement to regulate federal elections. ..... 4

B. The challenged conditions would be exorbitantly expensive to implement and would impair election administration. ..... 10

CONCLUSION ..... 14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Coal. For Humane Immigrant Rights v. DHS*,
2026 WL 3306646 (D.D.C. Nov. 2, 2026) .......... 10

*Illinois v. FEMA*,
801 F. Supp. 3d 75 (D.R.I. 2025) .......... 2

*Illinois v. Noem*,
813 F. Supp. 3d 282 (D.R.I. 2025) .......... 2

*League of Women Voters of Mass. v. Trump*,
2026 WL 2620871 (D. Mass. Sept. 4, 2026) .......... 8

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 13

*Michigan v. Noem*,
819 F. Supp. 3d 1163 (D. Or. 2025) .......... 2

*Moore v. Harper*,
600 U.S. 1 (2023) .......... 4, 13

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 3

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) .......... 13

*United States v. Benson*,
179 F.4th 470 (6th Cir. 2026) .......... 7

*United States v. Evans*,
2026 WL 2267774 (D.D.C. Aug. 6, 2026) .......... 7

*United States v. Town of Thornapple*,
143 F.4th 793 (7th Cir. 2025) .......... 12

*USPS v. California*,
2026 WL 2687160 (U.S. Sept. 14, 2026) .......... 8

## CONSTITUTIONAL, STATUTORY, AND REGULATORY PROVISIONS

U.S. Const. art. I, § 4 .......... 4

52 U.S.C.
§ 20501 .......... 6
§ 20504 .......... 6
§ 20508 .......... 6
§ 20901 .......... 6
§ 21084 .......... 6
§ 21085 .......... 6

Ariz. Rev. Stat. Ann. § 16-602 .......... 5

Cal. Elec. Code
§ 2111 .......... 5
§ 2112 .......... 5
§ 2150 .......... 5
§ 2196 .......... 5
§§ 2220-2227 .......... 5
§§ 15000-15007 .......... 5
§§ 15100-15149 .......... 5
§§ 15300-15307 .......... 5
§§ 15400-15402 .......... 5
§§ 15500-15505 .......... 5
§§ 15600-15649 .......... 5

Colo. Rev. Stat. Ann. § 1-10-105 .......... 5

Conn. Gen. Stat. Ann. §§ 9-307 to 9-322b ........ 5

Del. Code Ann. tit. 15, §§ 4972-4981 ........ 5

10 Ill. Comp. Stat.
5/4-10 ........ 5
5/4-30 ........ 5
5/5-9 ........ 5
5/5-25 ........ 5
5/6-37 ........ 5
5/18A-15........ 5
5/19-8 ........ 5
5/20-8 ........ 5
5/22-7 ........ 5
5/22-9 ........ 5
5/24-16 ........ 5
5/24A-15........ 5
5/24B-10.1........ 5
5/24B-15........ 5
5/24C-12........ 5
5/24C-15........ 5

Mass. Gen. Laws ch. 51
§ 36........ 5
§ 42 ........ 5
§ 44........ 5
§ 47A ........ 5
§ 109a........ 5

Md. Code Ann., Election Law § 3-202........ 5

Mich. Comp. Laws Ann.
§ 168.822........ 5
§§ 168.841-845a........ 5

Minn. Stat.
§ 201.021........ 5

§ 201.022 ........ 5
§ 201.071 ........ 5

N.J. Stat. Ann.
§§ 19:31-3 to 3.3 ........ 5
§§ 19:31-10 to 10.1 ........ 5
§ 19:61-9 ........ 5

N.C. Gen. Stat. § 163-182.1 ........ 5

Or. Rev. Stat. Ann.
§ 254.485 ........ 5
§ 254.529 ........ 5
§ 254.555 ........ 5

R.I. Gen. Laws
§ 17-6-1.2 ........ 5
§ 17-9.1-26 ........ 5
§ 17-9.1-27 ........ 5
§ 17-9.1-34 ........ 5

Va. Code Ann.
§ 24.2-657 ........ 5
§ 24.2-665 ........ 5

**OTHER AUTHORITIES**

H.R. Rep. No. 107-329, pt. 1 (2001) ........ 6, 7

Karen L. Shanton, Cong. Rsch. Serv., R45549, The State and Local Role in Election Administration: Duties and Structures (2019) ........ 5

S. Rep. No. 103-6 (1993) ........ 6

## INTRODUCTION AND IDENTITY AND INTEREST OF AMICI STATES

The amici States of Illinois, California, Arizona, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, Washington, and the Governor of Kentucky (collectively, "amici States") submit this brief in support of Plaintiff-Appellees Metropolitan Government of Nashville and Davidson County, Tennessee; the City of Columbus, Ohio; and the Counties of Harris, El Paso, and Dallas, Texas (collectively, "plaintiffs"), and their opposition to the motion to stay pending appeal.

This case implicates two important interests shared by amici States. First, amici States have a significant interest in preserving their constitutional role in administering federal elections in their respective jurisdictions. Amici States likewise have a significant interest in protecting their residents, including from acts of terrorism, and in obtaining the funding that Congress has for decades allocated to them for that purpose.

The challenged conditions would severely undermine both these interests. As plaintiffs explain, Opp. 3-6, this case concerns a set of conditions that the Federal Emergency Management Agency ("FEMA") has placed on the Homeland Security Grant Program ("HSGP"), the largest source of federal counterterrorism funding for the States, including the amici States, which receive over $700 million annually. Congress established the HSGP program in the aftermath of September 11, 2001, to support state efforts to prepare for and respond to acts of terrorism. In the ensuing decades, FEMA has evenhandedly distributed HSGP funds to all 50 States according to the terms Congress set out. But over the last 18 months, FEMA has embarked upon aggressive and unprecedented efforts to use the hundreds of millions of dollars appropriated for HSGP—and other federal grant programs—to extract unrelated policy changes from the States. Amici States have separately—and successfully—challenged those efforts in other courts. *Illinois v. Noem*, 813 F. Supp. 3d 282 (D.R.I. 2025); *Michigan v. Noem*, 819 F. Supp. 3d 1163 (D. Or. 2025); *Illinois v. FEMA*, 801 F. Supp. 3d 75 (D.R.I. 2025).

The conditions challenged here are part and parcel of that broader effort. As discussed below, FEMA has tried to impose new conditions on HSGP funding that would require States and localities to rewrite their election laws and policies to conform with the current administration's policy priorities—often at enormous cost. Amici States have challenged those conditions elsewhere as unlawful, *see Illinois v. FEMA*, No. 26-cv-485 (D.R.I.), as did plaintiffs here. The district court agreed with plaintiffs and vacated the conditions, and defendants now seek a stay of the judgment pending appeal. That stay, however, would undermine amici States' interests in preserving their constitutional role in administering elections and in protecting their residents against acts of terrorism. Defendants' motion should accordingly be denied.

## ARGUMENT

### The Stay Motion Should Be Denied.

As plaintiffs explain, Opp. 9-24, defendants' motion should be denied because they are highly unlikely to prevail on the merits and they will not be irreparably harmed absent a stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009). Amici States agree with those arguments and write to emphasize that the balance of equities and public interest tip

strongly against entry of a stay pending appeal. In particular, amici States explain how the challenged conditions, if implemented, would undermine their constitutional duty to regulate elections and pose enormous operational and logistical challenges.

### A. The challenged conditions would undermine the States' constitutional entitlement to regulate federal elections.

To start, the challenged conditions, if they were to take effect, would undermine the States' constitutional entitlement to regulate the time, place, and manner of holding federal elections. The Constitution charges the States with regulating federal elections, unless Congress preempts their choices. U.S. Const. art. I, § 4, cl. 1. The States have long embraced their "constitutional duty to craft the rules governing federal elections," *Moore v. Harper*, 600 U.S. 1, 29 (2023), and have enacted comprehensive statutory schemes regulating everything from

voter registration[1] and voter roll maintenance[2] to vote tabulation,[3] certification,[4] and auditing.[5] Cities and counties have likewise administered federal elections pursuant to state law since the early years of the Republic. Karen L. Shanton, Cong. Rsch. Serv., R45549, The State and Local Role in Election Administration: Duties and Structures 7 (2019).

Congress has invoked its power to preempt state election laws only selectively. For example, Congress enacted the National Voter Registration Act ("NVRA") to reduce barriers to voter registration and

---

[1] *E.g.*, 10 Ill. Comp. Stat. 5/4-10, 5/5-9, 5/6-37; Cal. Elec. Code §§ 2111, 2112, 2150, 2196; Mass. Gen. Laws ch. 51, §§ 36, 42, 44, 47A; Md. Code Ann., Election Law, § 3-202; Minn. Stat. § 201.071.

[2] *E.g.*, 10 Ill. Comp. Stat. 5/4-30, 5/5-25; Cal. Elec. Code §§ 2220-2227; Minn. Stat. §§ 201.021, .022; N.J. Stat. Ann. §§ 19:31-3 to 3.3, -10 to 10.1; R.I. Gen. Laws §§ 17-6-1.2; 17-9.1-26, -27, 34(f).

[3] *E.g.*, 10 Ill. Comp. Stat. 5/18A-15, 5/19-8, 5/20-8, 5/24-16, 5/24B-10.1, 5/24C-12; Cal. Elec. Code §§ 15000-15007, 15100-15149; Va. Code Ann. §§ 24.2-657, -665; Or. Rev. Stat. Ann. §§ 254.485, 254.529; Ariz. Rev. Stat. Ann. § 16-602; Del. Code Ann. tit. 15, §§ 4972-4981.

[4] *E.g.*, 10 Ill. Comp. Stat. 5/22-7, 5/22-9; Cal. Elec. Code §§ 15400-15402, 15500-15505; Or. Rev. Stat. Ann. § 254.555; Colo. Rev. Stat. Ann. § 1-10-105; Conn. Gen. Stat. Ann. §§ 9-307 to 9-322b; Mich. Comp. Laws Ann. §§ 168.822, 168.841-845a.

[5] *E.g.*, 10 Ill. Comp. Stat. 5/24A-15, 5/24B-15, 5/24C-15; Cal. Elec. Code §§ 15300-15307, 15600-15649; N.J. Stat. Ann. § 19:61-9; Mass. Gen. Laws ch. 54, § 109a; N.C. Gen. Stat. § 163-182.1(b)(1).

improve the accuracy of voter rolls. *See* 52 U.S.C. § 20501(b). In service of those goals, the NVRA directed an independent, bipartisan commission to partner with the chief election officers of the States to develop a national mail voter registration form. *Id.* § 20508(a). The NVRA also recognized the success of state efforts to register voters at state departments of motor vehicles, S. Rep. No. 103-6, at 9-10 (1993), and required "motor-voter" registration opportunities nationwide, 52 U.S.C. § 20504.

Similarly, after the 2000 presidential election was contested due to flaws in ballots cast by physical punch-card, Congress enacted the Help America Vote Act ("HAVA"). 52 U.S.C. §§ 20901-21145. HAVA appropriated funds to support the modernization of American voting systems and set "minimum requirements" for those systems. *Id.* §§ 20901, 21084. But HAVA deferred "[t]he specific choices on the methods of complying" with those requirements "to the discretion of the State[s]." *Id.* § 21085. It made that choice deliberately: Recognizing that "[t]he dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome,"

Congress left "the power and responsibility for running elections where it should be, in the hands of the citizens of this country." H.R. Rep. No. 107-329, pt. 1, at 32 (2001).

The current federal administration has repeatedly attempted to undermine the States' constitutional role. Over the summer of 2025, the federal government demanded complete and unredacted voter rolls, including voters' Social Security and driver's license numbers, from nearly every State. When 30 States refused, the Department of Justice sued them. All district judges who have ruled on the lawsuits so far have dismissed them as improper and illegal, and the only federal court of appeals to have ruled so far has agreed. *See, e.g.*, *United States v. Benson*, 179 F.4th 470, 474 (6th Cir.), *reh'g denied*, 187 F.4th 462 (6th Cir. 2026); *United States v. Evans*, No. 25-cv-4403, 2026 WL 2267774, at *5 n.4 (D.D.C. Aug. 6, 2026) (collecting cases), *appeal docketed*, No. 26-5296 (D.C. Cir.).

Undeterred, the President ordered the Postal Service to promulgate a rule that would have required the States to provide lists of certain eligible voters to the federal government, and would have permitted the Postal Service to refuse to deliver mail-in ballots to voters

in States that refused to provide those lists. Again, a federal district court enjoined the rule, finding it was likely contrary to law. *League of Women Voters of Mass. v. Trump*, No. 1:26-cv-11549, 2026 WL 2620871, *13-14, 16 (D. Mass. Sept. 4, 2026). The federal government sought a stay of the preliminary injunction from the Supreme Court, but the Court denied the application, holding that the government was unlikely to succeed on the merits and that the equitable factors did not favor a stay. *USPS v. California*, No. 26A305, 2026 WL 2687160 (U.S. Sept. 14, 2026).

FEMA's election conditions amount to a similar effort to exert federal control over state election law—this time, using over $1 billion in funds that Congress appropriated for the States as a cudgel. One of the challenged conditions would—again—require the States to provide a list of "all individuals" registered to vote in federal elections to the Department of Homeland Security ("DHS") so it can "verify" those individuals' eligibility to vote. Op. 4. Another would require the States to "transition[] from electronic voting systems that utilize bar codes or QR codes to count votes to equipment that accepts hand-marked paper ballots." *Id.* at 3. Others would require the States to "us[e]

methodology established by the [DHS] Secretary" to reconcile the number of ballots cast in each jurisdiction with the number of votes received, and to conduct a "manual audit" of 5% of ballots cast, also "according to the guidelines established by the Secretary." *Id.*

These conditions, if implemented, would ride roughshod over the States' own determinations about how to administer federal elections. The *States*, not DHS, are responsible for assessing voter eligibility and maintaining their voter rolls, and each State has put in place robust procedures for doing so, *supra* p. 5 & nn. 1-2. DHS has no authority, constitutional or statutory, to seek state voter rolls for the purpose of "verify[ing]" the States' work. Likewise, the States have enacted their own statutory and regulatory regimes to govern the methods by which their residents can vote and the procedures by which state and local authorities tabulate and audit election results, *supra* p. 5 & nn. 3-5; the federal government has no authority to impose rules, requirements, or "methodolog[ies]" for these quintessential matters of state election administration. The challenged conditions would thus accomplish an extraordinary transfer of power over election administration from the States to the federal government—one deeply discordant with our

Constitution and, as plaintiffs explain, not authorized by the HSGP statute. Opp. 9-19; *see also Coal. For Humane Immigrant Rights v. DHS*, No. 26-cv-3072, 2026 WL 3306646, at *9 (D.D.C. Nov. 2, 2026) ("no matter how strong" the President's policy rationale may be, "it does not justify overstepping the bounds of the Executive Branch's limited constitutional authority" in federal elections).

### B. The challenged conditions would be exorbitantly expensive to implement and would impair election administration.

The conditions, if they were to take effect, would also create enormous practical challenges for the States, and would impair the administration of elections to the detriment of election authorities and voters alike.

Many of the conditions would be extraordinarily costly for the States to implement—requiring an expenditure of funds that, as the district court observed, far exceed even the substantial amount of funds that Congress appropriated for HSGP. One of the conditions, for instance, would require the States to replace their electronic voting systems with "equipment that accepts hand-marked paper ballots." Op. 3. But amici States and their subdivisions have collectively spent

billions of dollars on voting technology and infrastructure to comply with existing federal voluntary guidelines, which encourage electronic systems of the kind the conditions prohibit. *See Illinois v. FEMA*, No. 26-cv-485 (D.R.I.), ECF 51-25 ¶ 15 (California has invested $500 million in acquiring and testing voting equipment that would need to be replaced to comply with this condition); ECF 51-62 ¶ 34 (New York has invested almost $50 million in voting systems); ECF 51-67 ¶ 16 (Pennsylvania has invested approximately $38 million in voting systems).[6] "[A]ll of [this] would go to waste" if the challenged conditions were to take effect. *FEMA* ECF 51-25 ¶ 15.

In addition to these staggering capital investment costs, the conditions are also likely to add millions of dollars in recurring expenses to the amici States' budgets, and a concomitant increase in operational burden. Compliance with the 5% manual audit condition and the reconciliation condition are likely to cost millions of dollars at every general election. *FEMA* ECF 51-28 ¶ 15 (explaining that it would cost at least $2 million to implement the audit condition, including an

[6] Citations to "*FEMA* ECF" are to the docket in *Illinois v. FEMA*, No. 26-cv-485 (D.R.I.).

"exponential increase in . . . staff hours"); ECF 51-52 ¶ 19 (estimating that the reconciliation obligation would cost over $1 million).[7]

The conditions would also seriously impair the administration of elections within amici States. Amici States are committed to making the ballot accessible for all. But the elimination of ballot-marking devices, for one, stands to reduce the efficiency and accuracy of elections and pose obstacles for voters with physical, cognitive, or language barriers. *See, e.g.*, *FEMA* ECF 51-33 ¶¶ 17-19; ECF 51-46 ¶¶ 45-48; *see also United States v. Town of Thornapple*, 143 F.4th 793, 795 (7th Cir. 2025) (holding that requiring all voters to use paper ballots likely violated HAVA's accessible voting system requirements). Amici States also seek to increase public trust in the electoral process, but the audit and reconciliation conditions threaten that goal by delaying the certification of the vote. *See, e.g.*, *FEMA* ECF 51-76 ¶ 27 (under Washington law, the manual audit would be "practically impossible" to

---

[7] Defendants appear to suggest—for the first time on appeal—that these large outlays are irrelevant because States can simply "include [these] projects in [their] application[s]" and obtain federal funding to cover them. Mot. 17. But FEMA did not dispute below that States and localities would have to "self-fund" compliance with the conditions, Op. 13, and, again, *supra* pp. 10-12, the cost of doing so would far outstrip the HSGP funding available to States.

complete before the certification deadline); ECF 51-21 ¶ 31 (condition could "significantly delay" certification).

The requirement that States use DHS's "SAVE" database to "verify" voter eligibility is particularly problematic given the system's high error rates. In Utah, for example, use of SAVE resulted in a noncitizen false positive rate of 99.4%. *FEMA* ECF 51-62 ¶ 65. Such high rates of false positives pose a substantial risk of disenfranchising qualified voters. *See FEMA* ECF 51-76 ¶ 34. That practical risk would profoundly undermine amici States' commitment to reducing barriers to voting, as well as the "public interest," which "favors permitting as many qualified voters to vote as possible." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). After all, the public has a "strong interest in exercising the fundamental political right to vote," *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006), a right that protects all other rights.

At bottom, permitting the challenged conditions to take effect would impair the States in executing their "constitutional duty" to craft and administer "the rules governing federal elections." *Moore*, 600 U.S.

at 29. For that reason, alongside the reasons plaintiffs identify in their opposition to the stay motion, a stay should be denied.

## CONCLUSION

The Court should deny defendants' motion to stay the judgment below pending appeal.

Respectfully submitted,

ROB BONTA
Attorney General
State of California

MICHAEL L. NEWMAN
Senior Assistant Attorney General
LEE I. SHERMAN
JAMES E. STANLEY
Supervising Deputy Attorneys General
JESSE BASBAUM
LISA C. EHRLICH
DEYLIN THRIFT-VIVEROS
DELBERT TRAN
Deputy Attorneys General
455 Golden Gate Ave., Ste. 11000
San Francisco, CA 94102

KWAME RAOUL
Attorney General
State of Illinois

JANE ELINOR NOTZ
Solicitor General

/s/ Alex Hemmer
ALEX HEMMER
Deputy Solicitor General
KATHLEEN NACCARATO
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5526
alex.hemmer@ilag.gov

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

ANNE E. LOPEZ
*Attorney General*
*State of Hawaiʻi*
425 Queen Street
Honolulu, HI 96813

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
445 Minnesota Street, Ste. 600
St. Paul, Minnesota 55101

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

JENNIFER DAVENPORT
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
201 3rd Street NW
Albuquerque, NM 87109

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

JEFF JACKSON
*Attorney General*
*State of North Carolina*
114 W. Edenton Street
Raleigh, NC 27603

DAN RAYFIELD
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*
150 South Maine Street
Providence, RI 02903

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

JAY JONES
*Attorney General*
*Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

JOSHUA L. KAUL
*Attorney General*
*State of Wisconsin*
17 W. Main Street
Madison, WI 53703

ANDY BESHEAR
*Governor*
*Commonwealth of Kentucky*
501 High Street
Frankfort, KY 40601

November 6, 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations set out in Federal Rule of Appellate Procedure 29 because it contains 2,552 words. This brief complies with the typeface requirement of Rule 32(a)(5) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word.

/s/ Alex Hemmer
ALEX HEMMER

November 6, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2026, I electronically filed the foregoing Brief of Amici Curiae Illinois et al. with the Clerk of the Court for the United States Court of Appeals for D.C. Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Alex Hemmer
ALEX HEMMER