**[ORAL ARGUMENT NOT YET SCHEDULED]**

**No. 26-5368**

---

**IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTIES, TENNESSEE, *et al.*,
Plaintiffs-Appellees,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*,
Defendants-Appellants.

---

On Appeal from the United States District Court for the District of Columbia

---

**REPLY IN SUPPORT OF APPELLANTS' MOTION FOR STAY PENDING APPEAL**

---

JONATHAN D. GUYNN
*Acting Assistant Attorney General*

JOHN BAILEY
*Counsel to the Acting Assistant Attorney General*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-6993*

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY .......... 1

ARGUMENT .......... 3

I. FEMA Had Statutory Authority to Implement Election-Security Conditions .......... 3

II. The Equitable Factors Justify A Stay Pending Appeal .......... 12

CONCLUSION .......... 14

CERTIFICATE OF COMPLIANCE

## INTRODUCTION AND SUMMARY

The district court vacated election-security conditions that FEMA has imposed on Homeland Security Grant Program recipients. Under the challenged conditions, recipients would be unable to access the final 20% of their grant funds until they certify compliance with certain election-security measures that FEMA has determined are vital to safeguarding the Nation's elections and election infrastructure. Those conditions reflect proper exercises of FEMA's broad authority to allocate grant funds among different recipients and projects based on FEMA's determinations about how the funds may be most effectively spent to prepare for and respond to acts of terrorism.

In response, plaintiffs barely defend much of the district court's reasoning. They do not deny that FEMA has authority to impose conditions. They do not dispute that safeguarding election infrastructure is one proper use of counterterrorism funds. They do not take issue with FEMA's longstanding requirement that recipients spend a minimum percentage of grant funds on election-security projects or explain how these conditions differ in any practical sense from such a minimum-spend condition. And they do not meaningfully grapple with the obvious ways in which the projects that

FEMA has identified relate to safeguarding elections to prevent acts of terrorism.

Instead, plaintiffs shift their focus, claiming that whatever FEMA's authority, the agency may not withhold grant funds until recipients comply with conditions. And they quickly retreat to arguments that some clear-statement rule attaches in this context or, indeed, that FEMA may not constitutionally impose *any* conditions on federal-funding recipients by regulation. But those arguments—many of which the district court did not accept—are irreconcilable with FEMA's broad discretion to administer the Homeland Security Grant Program, with FEMA's longstanding imposition of conditions on that program designed to ensure that funds are spent on critical election-security projects, and with the common practice across agencies of establishing grant conditions to ensure the effective and efficient use of federal funds.

Regardless, plaintiffs nowhere justify denying the government's request as an equitable matter. Grant recipients may access 80% of their funds before they certify compliance, and plaintiffs do not identify any immediate need for the remainder of the funds. At the same time, they conspicuously do not represent that they will return any funds disbursed

while this appeal is pending if FEMA ultimately prevails. In that context, it is appropriate to stay the district court's order to allow the conditions' lawfulness to be fully litigated before FEMA is forced to disburse the contested grant funds.

## ARGUMENT

### I. FEMA Had Statutory Authority to Implement Election-Security Conditions

1. As explained, *see* Mot.15-24, the challenged election-security conditions fall within FEMA's broad statutory authority to administer the Homeland Security Grant Program. The challenged conditions reflect nothing more than FEMA's determination that the specified election-security projects should be prioritized over other counterterrorism projects—and, thus, that grant recipients should not receive the full measure of their funds for other projects until they complete the election-security measures. That determination falls within FEMA's broad statutory discretion to allocate grant funds among different recipients and different projects based on FEMA's evaluation of the relative risks posed by different threats and the likely effectiveness of particular countermeasures.

In response, plaintiffs do not dispute that—as the Department has long stated—election infrastructure is "critical infrastructure" whose security the

program is concerned with. Nor do plaintiffs dispute the lawfulness of FEMA's longstanding requirement that a minimum percentage of all grant funds be expended on election-security projects. Nor do they meaningfully defend the district court's reasoning that FEMA may not impose any conditions at all. *See* Dkt.42, at 12.

Instead, plaintiffs contend at the outset that FEMA cannot withhold grant funds, seemingly for any reason. Resp.11-12, 13. But that reflects a category error. As explained, FEMA can determine that election-security projects should be funded before other counterterrorism projects. And FEMA necessarily also has the ancillary authority to effectuate that choice, including by crafting remedial measures to ensure that grant recipients comply with the program's terms. Plaintiffs thus properly do not dispute that FEMA may, for example, determine that certain activities do not reflect allowable costs or require grant recipients to provide access to their records for audits. *See* Mot.20. It should therefore be undisputed that FEMA could, if it wished, include program terms permitting it to withhold funds from recipients who (for example) expended funds on non-allowable costs or refused to provide the requested access. So too here.

Plaintiffs' specific focus on FEMA's purported lack of authority under 6 U.S.C. § 608, Resp.13-14, is also erroneous. As an initial matter, although plaintiffs express doubt that the government intends to rely on that statute (Resp.13-14), the government expressly and repeatedly invoked that provision as providing relevant authority to allocate funds according to FEMA's priorities, *see* Mot.16, 19, 21-22, 23. And on the merits, plaintiffs' reading of that statutory authority is overly cramped. Plaintiffs appear to suggest (Resp.14) that the conditions cannot be authorized under § 608 because FEMA had already allocated funds among different recipients pursuant to that section before issuing the Notice of Funding Opportunity. But nothing in § 608 limits FEMA to a once-annual allocation; instead, the statute provides ongoing authority to FEMA to allocate unobligated funds among different recipients, including based on FEMA's determination of relative threat levels and the "anticipated effectiveness" of particular projects. 6 U.S.C. § 608(a). That is exactly what the challenged conditions do.

Although plaintiffs contend (at 12) that the conditions reflected "unfunded mandates" for which grant funds could not have been used—a point that underlays much of the district court's analysis—they provide little support for this proposition. Although plaintiffs suggest that it is unclear

whether they could have applied for grant funds to carry out the projects specified in the conditions, the notice itself makes clear that grant recipients may expend funds on election-security projects—and, indeed, requires them to spend a minimum of 3% of funds on such projects. *See* Dkt.36-5, at 15. And the specific projects described in the challenged conditions are plainly presented in the notice as the sorts of election-security investments contemplated by the minimum allocation requirement. *See id.* Nor was this point somehow "waived," *contra* Resp.12. Parties may forfeit claims, not arguments, *see Yee v. City of Escondido*, 503 U.S. 519, 534 (1992)—and certainly not descriptive points about how the challenged conditions or program operates.

2. Plaintiffs make no more headway when they contend that the conditions do not relate to preparing for or responding to acts of terrorism within the meaning of the statute. The statute itself expressly identifies as one relevant threat the possibility of attacks on "critical infrastructure sectors," 6 U.S.C. § 608(b), and plaintiffs do not seriously dispute the Department's longstanding view that election infrastructure is critical infrastructure for these purposes. As explained, the challenged conditions are plainly geared at safeguarding elections and election infrastructure from

potential attacks by hostile actors, both on the infrastructure itself and on the public's confidence in the security of the Nation's elections. *See* Mot.21-23.

In contending that such threats do not fall within the scope of the statute, plaintiffs selectively quote from the statutory definition of "terrorism." *See* Resp.15. Plaintiffs assert that the terrorism reached by the statute must "be 'dangerous to human life or potentially destructive,'" Resp.15 (quoting 6 U.S.C. § 101(18)), while omitting the provision making clear that acts of terrorism may include those acts that are "destructive of critical infrastructure," 6 U.S.C. § 101(18)—including, under the Department's longstanding critical-infrastructure designations, election infrastructure. And plaintiffs further assert that acts of terrorism are only those that involve "intimidation or coercion" or "mass destruction, assassination, or kidnapping," Resp.15, while omitting that the statute encompasses acts generally intending to "to influence the policy of a government by intimidation," 6 U.S.C. § 101(18).

As the Department has long explained, election infrastructure and the public's confidence in elections are attractive targets for hostile actors, who may seek to exploit election-related vulnerabilities to intimidate the public

and influence policy. *See generally* Mot.7-8. Plaintiffs' unduly narrow understanding of the types of terroristic threats contemplated by the statute is only undermined by their acceptance of FEMA's longstanding requirement that recipients expend a portion of program grant funds on election-security projects.

Plaintiffs' response is especially lacking with respect to the two specific conditions discussed at length in the government's stay motion, which relate to upgrading election equipment and restricting noncitizen access to election systems. *See* Mot.21-22. Instead of grappling with the plain lawfulness of those conditions, plaintiffs fault the government for not discussing all five conditions, claiming that the government has "implicitly conced[ed]" that the remaining three conditions do not fall within the statutory scope of the program. Resp.16. But the discussion in the government's stay motion was illustrative, not exhaustive. It is plaintiffs who ultimately bear the burden in this suit of demonstrating that each challenged condition is unlawful. Despite that burden, neither plaintiffs nor the district court have engaged in the granular, condition-by-condition analysis that would be required to properly invalidate each condition as going beyond FEMA's statutory authority. That

failure alone justifies relief against the district court's undifferentiated vacatur.

3. Unable to justify their position based on ordinary statutory interpretation, plaintiffs quickly retreat to arguing that FEMA must "show a *clear* statement from Congress" as its source of statutory authority. Resp.9. Plaintiffs are incorrect.

Plaintiffs suggest in a single sentence that the conditions improperly "intrude upon" an area of state responsibility, triggering a clear-statement rule. Resp.9. To the contrary, the challenged conditions do not reflect any direct federal regulation of states; they are instead conditions on the receipt of federal funds, which States may choose to accept or reject. Such voluntary acceptance by States of federal funds is a far cry from direct federal regulation in areas traditionally committed to State control. *Cf. Bond v. United States*, 572 U.S. 844, 858 (2014) (cited at Resp.9) (involving federal criminal prohibition).

Plaintiffs' invocation (Resp.10, 17-19) of the major-questions doctrine fares no better. Nothing about FEMA's imposition of conditions on (a small minority of) federal funding within a single grant program reflects an

extraordinary or unusual claim of agency authority that might trigger that doctrine. *See* Mot.23-24.

Plaintiffs' suggestion that the major-question doctrine has "particular force" when dealing with "the core congressional power of the purse," Resp.18 (quotation omitted), is unavailing. Funding conditions are a routine, not extraordinary, exercise of agency authority. And nothing about such routine funding conditions implicates "the core congressional power" to raise revenue at issue in *Learning Resources, Inc. v. Trump*, 607 U.S. 229, 243 (2026).

Plaintiffs' attempt to generate some relevant "novelty" in these conditions fails. Resp.18-19. Plaintiffs do not dispute that FEMA has long imposed all manner of conditions on recipients of Homeland Security Grant Program funding, including conditions requiring recipients to expend specific portions of the funds on election security (and on other specific projects). The difference between such longstanding and unchallenged conditions and the conditions at issue here is, as explained, more semantic than practical. *See* Mot.23-24. And even if the conditions were new in some sense, FEMA's determination to impose slightly different conditions on a grant program is

not the sort of extraordinary step that would implicate the major-questions doctrine.

4. Plaintiffs' attempt to find refuge in the Spending Clause is no more persuasive. At the outset, plaintiffs range beyond the district court's analysis in contending that the conditions must violate the Spending Clause because they are imposed by the agency, rather than by Congress. Resp.20. Plaintiffs cite no authority binding on this Court supporting that view, which is irreconcilable with the Supreme Court's longstanding recognition that Congress may leave the particulars of implementing a spending program through "regulations" and "other guidelines" to the agency charged with administering the program. *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 670 (1985).

And plaintiffs' separate argument that the challenged conditions "do not relate" to the grant program's goals, Resp.21, is simply a recapitulation of plaintiffs' statutory authority argument. As explained, the conditions do indeed advance those goals—and, at the least, certainly "bear some relationship to" those goals, *New York v. United States*, 505 U.S. 144, 167 (1992)—and so are permissible under the Spending Clause.

## II. The Equitable Factors Justify A Stay Pending Appeal

1. As explained, *see* Mot.25-26, the district court's order will irreparably harm the government by forcing FEMA to disburse grant funds—which it may not be able to recover—without conditions that FEMA has determined are necessary to safeguard critical infrastructure.

In response, plaintiffs nowhere represent that they (or other grant recipients) would or could repay withdrawn funds if the government ultimately prevails on appeal. Instead, plaintiffs attempt to downplay the government's interest in ensuring the effective administration of the challenged conditions. Plaintiffs irreconcilably suggest both that there is no need for interim relief because the conditions could be enforced later if FEMA prevails on appeal and also that it could "hardly be imagined" that FEMA would demand the return of funds from non-compliant jurisdictions if the conditions are held lawful. Resp.23-24. That tension is precisely why relief is needed. FEMA has determined that it is vitally important for jurisdictions to agree to the challenged election-security conditions as part of their receipt of federal funds. The agency should not be forced to disburse funds without those conditions attached before the conditions' lawfulness is fully litigated.

Plaintiffs' attempt (Resp.21-22) to fault the government for a purported delay—of approximately three weeks—in seeking relief pending appeal is unavailing. The conditions in question relate to the final portion of funds that each recipient may ultimately withdraw. Thus, the government does not contend that its most serious harm will occur immediately (as plaintiffs highlight, *see* Resp.22-23) and has not asked for relief from this Court in a matter of days. Nonetheless, given the timeline for pursuing a full appeal on the merits, the government requires interim relief to ensure that it is not forced to disburse the relevant funds while the appeal remains pending. In that context, the government cannot be faulted for taking a few weeks to evaluate the path forward and consider its options before moving for interim relief.

Plaintiffs further underscore their error when they contend that the government is not irreparably harmed by relief that prevents implementation of FEMA's preferred policies. The Supreme Court has held otherwise. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025) ("Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration and quotation omitted)).

2. By contrast, plaintiffs identify very little countervailing interest in their ability to receive the full measure of allocated grant funds—rather than the 80% that are not subject to the challenged conditions—in the near term. Plaintiffs indeed identify no specific interest in receiving the final portion of their funds before the conditions' lawfulness may be litigated. And although plaintiffs complain that it would be "virtually impossible" for them to implement the challenged conditions with respect to the 2026 election, Resp.25-26, plaintiffs identify nothing in the relevant conditions requiring the impossible or suggesting that certification of compliance could not be achieved in a prospective manner for future elections.

## CONCLUSION

For the foregoing reasons and those in the government's motion, the Court should stay pending appeal the district court's judgment.

Respectfully submitted,

JONATHAN D. GUYNN
*Acting Assistant Attorney General*

*/s/ John Bailey*
JOHN BAILEY
*Counsel*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*

*(202) 514-6993*
*john.bailey@usdoj.gov*

November 2026

**CERTIFICATE OF COMPLIANCE**

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,551 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in CenturyExpd BT 14-point font, a proportionally spaced typeface.

*/s/ John Bailey*
John Bailey